### COMMONWEALTH *vs.* MARY E. FALVEY.

Poisoning the hens of another is indictable under § 85 of the Gen. Sts. *c.* 161, which provides a punishment for wilful and malicious destruction or injury of personal property of another "in any manner or by any means not particularly described or mentioned in this chapter," notwithstanding the provisions of § 80 for punishing poisoners of horses, cattle or other beasts.

An indictment under the Gen. Sts. *c.* 161, § 85, for "wilfully and maliciously" destroying or injuring personal property of another need not specify the means or mode of injury, nor charge more specifically guilty knowledge of the defendant.

Evidence that hens found and ate poison, at a place where it was exposed by a person with the intent that they should find and eat it, will sustain an averment in an indictment, that he caused them to eat the poison.

An indictment for destroying fourteen hens may allege them as of a collective value.

INDICTMENT on the Gen. Sts. *c.* 160, § 85, averring that Mary E. Falvey, on July 28, 1870, at Lynn, " did unlawfully, wilfully and maliciously kill and destroy fourteen barn door fowls, commonly called hens, of the value of twenty dollars, of the personal

property of one Lewis J. Morrill, by then and there mixing with food a certain quantity, to wit, two drachms, of a certain poison called rat poison, and by then and there causing the same to be taken and eaten by said fowls."

Before the jury were empanelled in the superior court, *Pitman*, J., overruled a motion of the defendant to quash the indict‑ ment on the following grounds: "1. Because it charges the defendant with committing no offence known to the law. 2. Be‑ cause it undertakes to charge the defendant under the Gen. Sts. *c.* 161, § 85, with destroying personal property in a manner and by means particularly described and mentioned in § 80 of the same chapter.* 3. Because it does not allege the kind or descrip‑ tion of food with which the poison is charged to have been mixed by the defendant. 4. Because it does not allege the kind or spe‑ cies of rat poison which the defendant is charged with mixing with the food. 5. Because it does not allege whether the defend‑ ant caused the food or the poison to be taken and eaten by the fowls, or a mixture of them. 6. Because the manner or means by which the defendant caused the food, poison or mixture to be taken and eaten by the fowls, is not alleged in the indictment. It is not alleged whether she administered it to the fowls, or ex‑ posed it so as to be taken and eaten by them, or how otherwise. 7. Because it is not alleged in the indictment that the defendant well knew that the rat poison mixed with the food was a deadly poison, or injurious to fowls. 8. Because fourteen distinct and separate offences are laid in one count in the same indictment. 9. Because the indictment does not allege the several values of the several articles of personal property charged to have been killed and destroyed, nor does it specifically allege the aggregate

---

* The Gen. Sts. *c.* 161, provide in § 80 for the punishment of " whoever wilfully and maliciously kills, maims or disfigures any horses, cattle or other beasts of another person, or wilfully and maliciously administers poison to any such beasts, or exposes any poisonous substance with intent that the same shall be taken or swallowed by them;" and in § 85 for the punishment of " who‑ ever wilfully and maliciously destroys or injures the personal property of an‑ other in any manner or by any means not particularly described or mentioned in this chapter."

value of all of them. 10. Because no offence is fully or plainly, substantially or formally, described to the defendant in said indictment."

At the trial, there was evidence tending to prove " that the defendant, at or about the time alleged in the indictment, having mixed what was called rat poison with bread in one vessel and with water in another, carried them to the shed of Morrill, where his hens were kept ; and that on the following day, at different times, fourteen of them were found dead in different places, some in the shed." The defendant contended that there was a variance between the proofs and the averments, as to the manner and means of killing and destroying the hens ; and requested a ruling "that, if the jury should find that the defendant merely exposed the poison in the shed with intent that it should be taken and eaten by the hens, such proof failed to sustain the averments." But the judge instructed the jury " that all that part of the indictment charging the manner or means of killing or destroying the fowls might be rejected as surplusage, and they might find the defendant guilty if they believed this evidence."

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*A. F. L. Norris,* for the defendant.

*C. Allen,* Attorney General, for the Commonwealth.

AMES, J. This indictment is founded upon the 85th section of the Gen. Sts. *c.* 161, which appears to have been intended to provide generally for all cases of the wilful and malicious destruction or injury of the " personal property of another," not included in the specific provisions of the preceding sections of the same chapter. The construction contended for by the defendant would require us to hold that the statute legalizes the use of poison for the wilful and malicious destruction or injury of any personal property of another, not included under the description of " horses, cattle or other beasts." It is impossible to believe that such could have been the purpose of the statute. It is true that the terms of the section apply to injury to personal property " in any manner and by any means not particularly described or mentioned " in that chapter ; and that injury to a certain kind of

property by poisoning is previously mentioned. But we do not think that the mere instrumentality by which, or the mere mode in which, the wrong is done, is the turning point in the construction of the section; and there is no occasion to set forth or prove the means used. *Commonwealth* v. *Sowle*, 9 Gray, 304. It appears to us that it was intended to prohibit any destruction or injury of personal property, not provided for in other parts of the chapter, whether accomplished by the use of poison or otherwise.

It was not necessary to state what kind of poison was used; and the charge that the act was done unlawfully, wilfully and maliciously was sufficient, without a more distinct averment of guilty knowledge in the defendant. *Commonwealth* v. *Galavan*, 9 Allen, 271. The intent to poison the hens, and the placing of the poison where they were expected to, and did, find and eat it, was causing them to eat it. As the evidence was that the whole fourteen were killed, there is no impropriety in setting forth their collective value in the indictment. *Hope* v. *Commonwealth*, 9 Met. 134. *Commonwealth* v. *Lavery*, 101 Mass. 207. We find no variance between the averment and the proof, and no valid reason for sustaining the motion to quash the indictment.

*Exceptions overruled.*